## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

ROBIN A. CUNNINGHAM, )
1717 Freeman St. S )
Saint Petersburg, FL 33701 )
    Plaintiff, ) Case Number:
     )
v. )
     )
SOUTHWEST AIRLINES, )
2702 Love Field Dr. )
Dallas, TX 75235 )
    Defendant. )

## COMPLAINT
### (JURY TRIAL DEMANDED)

Comes now, Robin A. Cunningham ("Plaintiff") by and through her undersigned counsel, Charles Tucker, Jr., and hereby files her Complaint for damages against Southwest Airlines ("Defendant"). In support of her Complaint, Plaintiff states as follows:

### PARTIES

1. Plaintiff is an adult resident citizen of Florida, residing at 171 Freeman St. S, Saint Petersburg, FL 33701.

2. Defendant is a corporation with its registered office located at 2702 Love Field Dr., Dallas, Tx. 75235

### JURISDICTION AND VENUE

3. This action is being brought pursuant to 28 U.S.C. Section 1331, 28 U.S.C. Section 1343(a)(3) and 42 U.S.C. Section 1981 and includes any and all federal law claims plead herein for which jurisdiction and venue is attached.

4. Venue is proper in this district, pursuant to 28 U.S.C. Section 1391 because substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

## ADMINISTRATIVE REMEDIES

5. Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC Charge No. 515-2018-00565).

6. The EEOC conducted an investigation on Plaintiff's claim. On August 25, 2020, the Equal Employment Opportunity Commission issued a dismissal and notice of right to sue.

7. The Complaint is being filed within ninety (90) days of the Plaintiff's receipt of the Notice of Right to Sue. Plaintiff has complied with all statutory and administrative prerequisites to filing suit.

## FACTS

8. Plaintiff worked for Defendant as a customer service agent at the Ronald Reagan National Airport ("DCA") location.

9. Plaintiff has received numerous commendations from customers and employees at DCA.

10. After four years in her position, Plaintiff decided she needed a change.

11. After checking for internal positions within Defendant's job postings, Plaintiff saw an opening in Puerto Rico for a customer service agent.

12. Plaintiff applied for the position and accepted an offer to relocate to Puerto Rico in May 2018.

13. Plaintiff began working for Defendant in Puerto Rico on June 1, 2018.

14. Immediately, Plaintiff began to notice an obvious disconnect and tension from other employees.

15. Soon after, Plaintiff quickly understood why there was such a disconnect between her and other employees.

16. Specifically, it became apparent that Plaintiff was being treated differently because she is black and not a native Spanish speaker.

17. It became apparent that this was the cause of the tension the Plaintiff felt from her coworkers. While Plaintiff would work with customers, her Hispanic coworkers would rudely come into her station, interrupt her assisting customers, and take over the transaction entirely from Plaintiff, despite no requests from Plaintiff or the customers for additional assistance.

18. It was apparent that because Plaintiff did not speak Spanish, her coworkers looked at her as less of an employee and as if she was unable to do her work, despite no requirement within the job duties that she speaks Spanish.

19. It was also apparent because when other employees, including her supervisors, would speak around her, they would speak in Spanish as to intentionally exclude her from the conversation.

20. Plaintiff not only received this treatment from other employees, but customers discriminated against Plaintiff as well.

21. On July 30, 2018, Plaintiff was attempting to assist a customer when he began rudely yelling at and berating Plaintiff because she did not speak Spanish.

22. During this interaction, another customer even attempted to physically attack Plaintiff while yelling that she needed to speak Spanish.

23. After a substantial amount of time, a Spanish speaking employee came over to assist the customer. Plaintiff removed herself from the situation out of professionalism and fear for her safety.

24. As Plaintiff was proceeding to the back area away from the customers, a station administrator walked past Plaintiff on her way to investigate the incident.

25. The administrator walked past Plaintiff, as if she did not exist, without asking Plaintiff any details about what had just taken place despite actual knowledge that Plaintiff had just been involved in the incident she was going to investigate.

26. Plaintiff went into the break room to wait for instruction.

27. A supervisor came into the room and told Plaintiff that they needed to talk.

28. Plaintiff asked for another coworker to come in with Plaintiff so that she was not alone during the conversation.

29. While Plaintiff was speaking with the supervisor, the administrator that had previously walked by Plaintiff without any acknowledgment to Plaintiff rudely entered the room.

30. The administrator and the supervisor began to carry on a conversation in Spanish, while Plaintiff sat in the room listening but having no understanding of what was being said because she does not speak fluent Spanish.

31. After the administrator left, Plaintiff asked the supervisor what had just been said.

32. The supervisor stated that the administrator only said that the incident needed to be documented.

33. Plaintiff does not believe that was all that was said by the administrator.

34. Due to Plaintiff's inability to speak fluent Spanish, she will never know the conversation's full extent.

35. It is evident that the administrator and supervisor did not intend for Plaintiff to know what was said because of their election to speak Spanish in front of Plaintiff despite both individuals being able to speak fluent English.

36. Plaintiff even stated to the supervisor that she is trying to learn Spanish so that she could be accepted more in her position by customers and employees, but that it adds insult to injury when they speak Spanish around her knowing that she does not fully comprehend the language.

37. Plaintiff was then told she could go write her personal statement of what had occurred.

38. Another coworker approached Plaintiff to check on her.

39. Plaintiff told this coworker that she did not feel supported by her or any of the other employees that saw her getting attacked simply because she did not speak Spanish.

40. Plaintiff believed that at the very least, one of the Spanish speaking employees should have stepped in to inform the customers that she does not speak fluent Spanish, nor is she required to simply because she is in Puerto Rico.

41. When Plaintiff returned her personal statement to her supervisor, he informed her that she had been suspended.

42. Shortly, after Plaintiff was terminated.

43. Notably, the Spanish speaking employees had been caught numerous times giving discounts to Puerto Rican customers against company policy but received no punishment whatsoever.

## CAUSES OF ACTION

### COUNT I: RACIAL DISCRIMINATION: DISPARATE TREATMENT

44. Plaintiff hereby realleges all of the foregoing paragraphs as if fully restated herein.

45. Plaintiff is a black female.

46. Plaintiff is a member of a protected class who was subjected to race discrimination in violation of Title VII of the Civil Rights Act of 1964.

47. Plaintiff was employed by Defendant as a customer service agent.

48. Plaintiff was the only black and non-Spanish speaking employee at this location.

49. Employees would routinely speak in Spanish around Plaintiff so that she would not know what was being said.

50. Employees would routinely take her customers because she did not speak Spanish despite no request from Plaintiff, or customers, for additional assistance.

51. Similarly situated Spanish speaking customers were caught on numerous occasions providing discounts to Puerto Rican customers against company policy but received no discipline.

52. Plaintiff was verbally and physically attacked by customers simply because she did not speak Spanish.

53. The administrator investigating the incident walked by Plaintiff without speaking to Plaintiff or asking her any details about what took place.

54. The administrator then spoke to Plaintiff's supervisor in Spanish in front of Plaintiff so that Plaintiff would not understand what was being said.

55. Plaintiff was suspended and ultimately terminated for this incident despite similarly situated Spanish speaking employees committing terminable offenses and receiving no discipline.

56. The act and violation of Defendant resulted in a knowing, willful, and international violation of Plaintiff's rights guaranteed under Title VII of the Civil Rights Act of 1964.

57. As a direct and proximate result of Defendant's unlawful and discriminatory conduct toward Plaintiff, Plaintiff has lost wages, potential earnings, and sustained other pecuniary loss.

58. Defendant's history of racist and discriminatory practices, insults, contempt, and disdain have been demeaning to Plaintiff and have caused him, and others, to suffer deep pain, humiliation, anxiety, and emotional distress.

59. The unlawful actions of Defendant complained above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

## COUNT II: RETALIATION

60. Plaintiff hereby realleges all of the foregoing paragraphs as if fully restated herein.

61. Plaintiff is a black female.

62. Plaintiff is a member of a protected class who was subjected to race discrimination in violation of Title VII of the Civil Rights Act of 1964.

63. Plaintiff was employed by Defendant as a customer service agent.

64. Plaintiff was the only black and non-Spanish speaking employee at this location.

65. Employees would routinely speak in Spanish around Plaintiff so that she would not know what was being said.

66. Employees would routinely take her customers because she did not speak Spanish despite no request from Plaintiff, or customers, for additional assistance.

67. The similarly situated Spanish speaking customers were caught on numerous occasions providing discounts to Puerto Rican customers against company policy but received no discipline.

68. Plaintiff was verbally and physically attacked by customers simply because she did not speak Spanish.

69. The administrator investigating the incident walked by Plaintiff without speaking to Plaintiff or asking her any details about what took place.

70. The administrator then spoke to Plaintiff's supervisor in Spanish in front of Plaintiff so that Plaintiff would not understand what was being said.

71. Plaintiff informed Plaintiff that it added insult to injury that they would intentionally speak Spanish around her with full knowledge that she did not fully understand what was being said.

72. Soon after she spoke out against the intentional act of using Spanish to hide conversation around her, Plaintiff was suspended and ultimately terminated for this incident despite similarly situated Spanish speaking employees committing terminable offenses and receiving no discipline.

73. The act and violation of Defendant resulted in a knowing, willful, and international violation of Plaintiff's rights guaranteed under Title VII of the Civil Rights Act of 1964.

74. As a direct and proximate result of Defendant's unlawful and discriminatory conduct toward Plaintiff, Plaintiff has lost wages, potential earnings, and sustained other pecuniary loss.

## COUNT II: HOSTILE WORK ENVIRONMENT

75. Plaintiff hereby realleges all of the foregoing paragraphs as if fully restated herein.

76. Plaintiff is a black female.

77. Plaintiff is a member of a protected class who was subjected to race discrimination in violation of Title VII of the Civil Rights Act of 1964.

78. Plaintiff was employed by Defendant as a customer service agent.

79. Plaintiff was the only black and non-Spanish speaking employee at this location.

80. Employees would routinely speak in Spanish around Plaintiff so that she would not know what was being said.

81. Employees would routinely take her customers because she did not speak Spanish despite no request from Plaintiff, or customers, for additional assistance.

82. Similarly situated Spanish speaking customers were caught on numerous occasions providing discounts to Puerto Rican customers against company policy but received no discipline.

83. Plaintiff was verbally and physically attacked by customers simply because she did not speak Spanish.

84. The administrator investigating the incident walked by Plaintiff without speaking to Plaintiff or asking her any details about what took place.

85. The administrator then spoke to Plaintiff's supervisor in Spanish in front of Plaintiff so that Plaintiff would not understand what was being said.

86. Plaintiff was suspended and ultimately terminated for this incident despite similarly situated Spanish speaking employees committing terminable offenses and receiving no discipline.

87. The actions of intentionally speaking Spanish around Plaintiff to conceal conversation, standing by idly as she was attacked by customers for not speaking Spanish, and the continuous unsolicited interference with her transactions with customers was severe and pervasive enough to alter the work environment.

88. The act and violation of Defendant resulted in a knowing, willful, and international violation of Plaintiff's rights guaranteed under Title VII of the Civil Rights Act of 1964.

89. As a direct and proximate result of Defendant's unlawful and discriminatory conduct toward Plaintiff, Plaintiff has lost wages, potential earnings, and sustained other pecuniary loss.

## RELIEF

112.  Plaintiff requests that the Court issue the following relief:

   a) Enter declaratory relief declaring that Defendant has engaged in race discrimination and constitutional violations under 42 U.S.C. Section 1981;

   b) Award Plaintiff compensatory and punitive damages for all the mentioned causes of action in an amount to be determined by a jury of his peers;

   c) Award Plaintiff attorney's fees, cost and expenses of litigation; and

   d) Award such other relief to which Plaintiff may be entitled to under the law.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands judgment against Defendant in an amount exceeding the jurisdictional requirements of this Court, all together with

Court costs, including attorney's fees, plus pre and post-judgment interest, and for any other relief which this Court deems just and proper.

Respectfully submitted this 30th day of November 2020.

                                         CHANNA LLOYD, ESQ.
                                         Florida Bar No. 1002007
                                         clloyd@cochranfirm.com
                                         **COCHRAN FIRM ORLANDO**
                                         118 E. Jefferson Street, Suite 306
                                         Orlando, Florida 32801
                                         Primary E-Mail: clloyd@cochranfirm.com
                                         Telephone 407-271-8590
                                         Facsimile 407-271-8059
                                         Attorney for the Plaintiff